IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| THE ARK GROUP, INC.,<br><br>    Plaintiff,<br>v.<br><br>SHIELD RESTRAINT SYSTEMS, INC.,<br>f/k/a AMSAFE COMMERCIAL<br>PRODUCTS, INC.,<br><br>    Defendant. | Civil Action No. 1:18-cv-00755-RGA |

**MEMORANDUM**

Presently before the Court is Defendant's Motion to Dismiss Plaintiff's Complaint. (D.I. 11). The Parties have fully briefed the motion. (D.I. 12, 16, 18). For the reasons set forth below, Defendant's motion is **GRANTED**.

**I.    BACKGROUND**

Defendant Shield Restraint Systems, Inc. ("Shield") contracted to purchase Beam's Industries, Inc. ("Beam's") from Plaintiff The Ark Group, Inc. ("Ark Group") on January 30, 2013. (D.I. 12 at 1). The Parties' final deal is embodied in the Stock Purchase Agreement ("Agreement"). (D.I. 4). At the time of the sale, Beam's was involved in the seatbelt and restraint devices business. (D.I. 12 at 1). The Agreement includes indemnification provisions in Article VII. (D.I. 4). The Section entitled "Indemnification for Buyer's Benefit" states that Ark Group will indemnify Shield for damages related to "any injury to individuals or property resulting from or arising out of the ownership, possession or use of any product manufactured, sold, leased or delivered by [Beam's] on or prior to the Closing Date . . . ." (*Id.* at § 7.2(e)). That Section also provides that Ark Group will indemnify, inter alia, "breach of any

representation or warranty." (*Id.* at § 7.2(a)). Section 7.1 limits Ark Group's liability, stating, "All of the representations and warranties herein will survive the Closing and continue in full force and effect for a period of two years thereafter . . . ." (*Id.* at § 7.1). Section 7.7(a) further limits the amount Shield might recover by placing a $100,000 deductible and a $2,000,000 cap on the damages indemnified under Sections 7.2(a) and 7.2(e). (*Id.* at § 7.7(a)).

The present controversy stems from an indemnification claim brought to Ark Group by Shield on October 9, 2015. (D.I. 12 at 4). The parties agree that the claim falls within the subject matter of Section 7.2(e) (product liability), but they disagree whether the claim is time-barred under the Agreement. (*Id.*).

Ark Group filed the present suit seeking declaratory judgment that the claim is time-barred on May 17, 2018. (D.I. 2). On July 5, 2018, Shield filed this Motion seeking dismissal of the action. (D.I. 11).

## II. 12(b)(6) LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."). Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw

2

the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). In ruling on a motion to dismiss, "courts must consider the complaint in its entirety, as well as other sources . . . , in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### III. DISCUSSION

"Contract terms themselves will be controlling when they establish the parties' common meaning so that a reasonable person in the position of either party would have no expectations inconsistent with the contract language." *Eagle Indus., Inc. v. DeVilbiss Health Care, Inc.*, 702 A.2d 1228, 1232 (Del. 1997). When a court is interpreting a contract, it "must give effect to all terms of the instrument, must read the instrument as a whole, and, if possible, reconcile all the provisions of the instrument." *Elliott Assocs., L.P. v. Avatex Corp.*, 715 A.2d 843, 854 (Del. 1998). Under Delaware law, contract terms are ambiguous "when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992). "The court may grant a motion to dismiss when unambiguous language of a contract contradicts plaintiffs' allegations in a complaint." *Phunware, Inc. v. Excelmind Grp. Ltd.*, 117 F. Supp. 3d 613, 625 (D. Del. 2015).

Shield argues that the Agreement's two-year limitations period does not extend to product liability indemnification. Rather, Shield advocates that the Agreement's limitations period refers only to representations and warranties indemnification as described in Section

3

7.2(a). (D.I. 12 at 7). Thus, Shield argues that the indemnification described in Sections 7.2(b)-(e) is unaffected by Section 7.1. (*Id.*).

Ark Group avers that the terms of the agreement are ambiguous. Ark Group supports its position by arguing that the last sentence of Section 7.2 contradicts Shield's reading. (D.I. 16 at 5). That sentence states, "The foregoing obligations shall be subject to the limitations set forth in <u>Sections 7.1</u> and <u>7.7</u>, except in the case of fraud." (D.I. 4 at § 7.2 (emphasis in original)). Ark Group further argues that Section 7.4(a) supports its conclusion. (D.I. 16 at 6). That provision, dealing with notice of potential indemnification claims to Ark Group, states:

> "Such notice shall (i) be in writing, (ii) be given prior to the applicable date set forth in <u>Section 7.1</u>, (iii) specifically identify the matters that have given rise to such indemnity claims in reasonable detail, and (iv) set forth the amount of the Damage suffered, or that may be suffered, by the Indemnitee."

(D.I. 4 at § 7.4(a) (emphasis in original)). In view of these two provisions, Ark Group argues that Shield's interpretation of the Agreement is an improper construction, based on a single sentence, and taken out of context. (D.I. 16 at 5).

The structure of the Agreement is fatal to Ark Group's theory of ambiguity. The Agreement clearly lists the provisions that constitute "Representations and Warranties" in Articles IV ("Representations and Warranties of Buyer") and V ("Representations and Warranties of Stockholder"). (D.I. 4). Covenants are in Article VI. (*Id.*). The Indemnification provisions are in Article VII. (*Id.*).

The contracting parties addressed two specific issues in Section 7.1. First, with limited exceptions, they placed a two-year limitations period on "representations and warranties." (*Id.* at § 7.1). The exceptions reference back to Article IV—the Section titled "Representations and Warranties of Stockholder." (*Id.*). Second, the parties clarified that each covenant would

4

"survive the Closing in accordance with its terms." (*Id.*). Mention of a blanket time-limit on the indemnification provisions is notably absent from Section 7.1

Considering the structure of the Agreement, Shield's interpretation is unambiguously correct. The indemnity provisions of the Agreement are not representations and warranties or covenants within the meaning of Section 7.1. A reasonable person reading the entire agreement would understand that Section 7.1's reference to "representations and warranties" refers to Articles IV and V and its reference to "covenants" refers to Article VI.

Ark Group's attempt to muddy the waters by pointing to internal cross-references within Section 7 of the Agreement falls flat. Undeniably, Section 7.1 limits Section 7.2, but only to the extent that Section 7.1 applies to the specific type of indemnification sought by Shield. Section 7.1 says nothing about limiting indemnification in the product liability context and is therefore inapplicable to Section 7.2(e). Moreover, Section 7.4's reference to the "applicable date" is only limiting when Section 7.1 provides such a date. In the case of product liability, Section 7.1 does not provide a date.[1] Thus, any claim for product liability indemnification would meet the timing requirement of Section 7.4(a)(ii). A reasonable person examining these cross-references would understand that they are relevant only to the extent that they apply to the specific provisions of Section 7.2.

The Agreement is not ambiguous regarding the proper application of the two-year limitations period. The two-year limitation applies only to warranties and representations contained in the Agreement. The indemnification provisions are not warranties and

---

[1] The contracting parties were explicit, referring to the relevant section, when limiting product liability indemnification in Section 7.7 of the Agreement. Moreover, the fact that the parties placed a limit on the available amount of indemnification in Section 7.7 supports the clear meaning of the Agreement. The contracting parties would have understood a dollar amount, not a time period, as the limit on potential liability.

5

representations. Consequently, the Agreement does not support Plaintiff's position and Plaintiff has failed to state a claim for relief under Rule 12(b)(6). I will grant Defendant's Motion to Dismiss.

A separate order will be entered.